## THE STATE ex rel. DICKMANN, Sheriff, v. CLARK et al.

### In Banc, November 10, 1902.*

1. **Sheriff's Fees for Keeping Prisoner Under Capias.** In addition to the statutory allowance for mileage and for the board of prisoners, the sheriff is entitled, under the statute (sec. 3246, R. S. 1899), to a fee of $1.25 per day for the safe-keeping of a person held by him under a capias, while "undergoing an examination preparatory to his commitment," where such person is so held for more than a day.

2. ———: TURNED OVER TO JAILER OR POLICE. The sheriff does not lose nor is he to be deprived of such fee by the fact that he has

---

*NOTE.—Decided June 28, 1902. Motion for rehearing filed; overruled November 10, 1902.

confined the prisoner in the city calaboose which is furnished for his use by the city police, one part of the calaboose being set aside for the sheriff's prisoners, who while there are guarded and kept by the police and a jailer, for which service and keeping the city pays. Unless such arrangement for keeping the sheriff's prisoners is the result of an ordinance or statute on the subject, it is purely a matter of comity between the sheriff and police department, which can not affect the statute.

3. ——: ——: COMMITMENT. Until a prisoner is either bailed, committed or discharged, any imprisonment in the St. Louis calaboose, even though the city pays for the jailer and the police by which he is guarded, is at the discretion and for the protection of the sheriff who has arrested him, and is not a committing of such person to jail. Hence, the statute, which gives the sheriff a fee for a prisoner while "undergoing an examination preparatory to commitment," applies.

4. ——: CONFINEMENT IN JAIL: NO ORDINANCE: COMITY. Unless there is some law or ordinance requiring the police department of the city of St. Louis, where the city and county municipalities have been merged, to set apart a part of the calaboose for the sheriff's prisoners and requiring the police to safely keep his prisoners, any arrangements to that effect between him and the police commissioners are purely matters of comity, and may be discontinued at any time by either party, and, hence, can not affect the sheriff's fees under a statute which allows him compensation for keeping a prisoner between the time of his arrest and commitment, provided it is longer than one day,

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Morton Jourdan* and *Johnson, Houts, Marlatt & Hawes* for relator.

(1) At the time of the passage of the statute in question in 1839, the circuit court alone had jurisdiction to try all felonies, and all misdemeanors (except breach of the peace). Laws 1835, pp. 135, 372. (2) And it was therefore made imperative by the statute that in every case, both of felonies and misdemeanors, the officer should, upon the arrest of any person, take him before a magistrate for examination as soon as pos-

sible, where he might be discharged, recognized or com-
mitted. R. S. 1835, art. 2, p. 476, secs. 12 et seq. (3)
The Act of 1839, was passed for the purpose of com-
pensating the officer for his custody of the prisoner
from the time of the arrest until he should be dis-
charged, recognized or committed. Laws 1839, p. 97.
(4)   The words "undergoing an examination prepar-
atory to his commitment," in view of the express pur-
pose of the Legislature to compensate the officer for
his custody of the prisoner, should be construed to cover
the entire time from the arrest to the end of such cus-
tody, whether by discharge, recognizance or commit-
ment, providing such custody extends over more than
one day.   (5) It is immaterial that, during a part of
the time Gognon was in custody, he was confined by the
sheriff in the holdover.   Thomas v. St. Louis County,
61 Mo. 547.   (6)   It is immaterial that the city of St.
Louis maintains the holdover, paying for food, light
and heat.   A separate charge is allowed for board and
all other necessary expenses of a prisoner, which the
sheriff does not and never has claimed.   R. S. 1899, sec.
3246.   (7) The St. Louis Court of Criminal Correction
exercises the dual functions of an examining magistrate
and a trial court, and proceedings before it are both
an examination and a trial.   State v. Hoffer, 44 Mo.
App. 543; sec. 21, R. S. 1899, p. 2545.

*H. A. Clover, Chas. W. Bates* and *Wm. F. Woerner*
for respondents.

(1)   Relator did not have the prisoner in his cus-
tody, or under his charge, for as much as one day while
said prisoner was "undergoing an examination prepar-
atory to his commitment." State ex rel. v. Wofford,
116 Mo. 220.   (2) The prisoner was not "transported"
at all, and his "safe-keeping and maintaining" was
not done by the relator, nor at the relator's expense,
but by the city of St. Louis through its police officers
and by means of its calaboose or holdover, all at the
expense of the city, which has already paid for the

very services for which the sheriff is now suing. (3) The sheriff has not performed any of the services for which the statute allows the fees claimed by him. (4) It was not more than one day from the time the prisoner was arrested by relator until the "examination preparatory to his commitment," was closed, and the prisoner committed to jail by the court. (5) No officer is entitled to fees of any kind unless provided for by statute. Statutes allowing fees must be strictly construed. State ex rel. v. Brown, 146 Mo. 406; State ex rel. v. Wofford, 116 Mo. 223; State ex rel. v. Seibert, 130 Mo. 216; State ex rel. v. Oliver, 116 Mo. 191. (6) The judge and prosecuting attorney found as a fact that the sheriff did not perform the service for which the statute allows the fees claimed. This finding is conclusive on the courts as said officers act in a quasi-judicial capacity and exercise a judgment and discretion in such matters, and can not be required by mandamus to make a contrary finding of fact. State ex rel. v. Oliver, 116 Mo. 194. (7) Besides, on the agreed statement of facts, the sheriff had not performed the service for which the fees claimed are allowed by law, and, hence, is not entitled to the fees. A prisoner is not undergoing examination until brought into court for that purpose, which occurred on the morning of October 31st, the very morning on which the examination closed, and he was committed to jail by the court to await trial. State ex rel. v. Wofford, 116 Mo. 220. (8) If any one has earned the fees claimed by the sheriff in this case it is the officer who performed the services, and not the sheriff, and such officer has already been paid by the city of St. Louis. Moutier v. Stumpe, 39 Mo. App. 161.

MARSHALL, J.—This is an original proceeding by mandamus, to compel the respondents who are, respectively, the judge and prosecuting attorney of the court of criminal correction of the city of St. Louis, to audit and certify to the city auditor, a fee bill for two dollars and fifty cents, in favor of the relator, who is

the sheriff of the said city, for the safe-keeping by him, for two days, of one Ted Gognon, while "undergoing an examination preparatory to his commitment" by the said court of criminal correction, upon a charge of petit larceny. The return admits all the facts stated in the alternative writ, and then sets up that the relator is not entitled to the compensation claimed, because the city of St. Louis maintains a calaboose, which is under the control of the police department, one portion of which is set apart for the sheriff's prisoners, and when the sheriff arrested Gognon, he placed him in said portion of said calaboose, where he was safely kept by the police force, and not by the sheriff, and upon this it is claimed that the sheriff has not performed the service, and therefore is not entitled to the fees provided by statute.

The case is submitted upon the following agreed statement of facts:

"It is agreed between the parties hereto that the above entitled cause may be heard and determined upon the following agreed statement of facts.

"1.   Said Joseph F. Dickmann is and was at the times hereinafter stated the duly elected, qualified and acting sheriff within and for the city of St. Louis.

"2. That the said Willis H. Clark is and was at the times hereinafter stated the duly elected, qualified and acting judge of the court of criminal correction of the city of St. Louis, and that the said Harry A. Clover is and was at said times the duly elected, qualified and acting prosecuting attorney within and for said city.

"3. That, on October 25, 1901, an information was duly filed in the St. Louis Court of Criminal Correction charging one Ted Gognon with the larceny of a bicycle of the value of $20; that upon the filing of said information a warrant was, on said day, duly issued to the plaintiff, as sheriff, commanding him to take said Gognon, and him safely keep, and to have his body bebefore the said court of criminal correction forthwith, to answer the complaint made against him for said larceny.

"4. That on October 30, 1901, the said sheriff did arrest and take said Ted Gognon into his custody under said warrant.

"5. That said Ted Gognon was arrested in said city of St. Louis after said court had adjourned for the day, and the judge thereof had departed from the building in which said court is held, so that the said Gognon could not be produced before said court on said day.

"6. That at the time of the arrest of said Ted Gognon, as aforesaid, the city of St. Louis had and maintained, and for many years prior thereto had continuously maintained, a jail in the said building in which the St. Louis Court of Criminal Correction is located as the place for the detention of prisoners legally committed thereto; and that said jail was in charge of a jailer employed and paid by the city, who, together with the guards and other attendants in the employ and pay of the city, maintained said jail, guarded the prisoners and attended to the furnishing of all the necessaries in the way of food, lodging, heat, etc., of the prisoners, and the city of St. Louis paid all the expenses of maintaining said jail, keeping prisoners, and furnishing all necessaries.

"That the city of St. Louis had also, prior to the arrest of said Ted Gognon, provided in said building what was known as the holdover or calaboose, for the use of the police force of the city of St. Louis, and to that end placed the same under the charge and control of the board of police commissioners of the city of St. Louis, which board of police commissioners had, prior to said arrest of Gognon, assigned a portion thereof for the use of the sheriff, for the purpose of enabling said sheriff to place therein prisoners when arrested by him, and for the safe-keeping of said prisoners between the time of said arrest and the bringing of them into court by the sheriff.

"That the entire expense of keeping and maintaining said holdover or calaboose, including that portion thereof set apart for the reception of prisoners arrested by the sheriff aforesaid, is, and always was, paid

by the city of St. Louis; that the city of St. Louis pays, and has always paid, all of the keepers, police turnkeys and force in charge of said calaboose or holdover, including said portion set apart for the use of prisoners arrested by the sheriff, and pays, and always has paid, for all food, bedding, lights, heat and other necessaries of prisoners and others confined therein.

"That upon the said Gognon being arrested as aforesaid, he was placed by the sheriff in the part of the holdover or calaboose which is set apart for prisoners so arrested by the sheriff, and said Gognon, while in said calaboose, was kept and guarded by the police officers of the city of St. Louis who were in charge of the said calaboose or holdover, without any charge or expense whatever to the said sheriff; and the said Gognon was maintained and necessaries of life furnished him, while in said calaboose, at the expense of the city of St. Louis, without any charge whatever to the said sheriff.

"7.   That at no time from the time of the arrest of said Gognon, on October 30, 1901, until he was produced in court on October 31, 1901, was the said Gognon actually undergoing examination.

"8.   That said Ted Gognon remained in said calaboose until the 31st day of October, when he was taken to the court of criminal correction, and was there arraigned and examined as to what his plea would be to said charge of petit larceny which had been preferred against him.

"9.   That on said day the said Gognon pleaded not guilty, and thereupon a commitment was made out and delivered to the sheriff, committing said Ted Gognon to jail, under which said commitment the said Ted Gognon was, on the 31st day of October, placed in the said jail of the city of St. Louis.

"10.   That on November 8, 1901, the said Ted Gognon was duly tried, found guilty and sentenced to the workhouse of the city of St. Louis for a period of sixty days.

"11.   That thereafter the clerk of the court of

criminal correction duly made out a fee bill, specifying the various items of costs accrued in said cause, and payable by the city of St. Louis, but, by direction of said judge of said court, omitting therefrom the charge of $1.25 for each of the two days, namely, October 30 and October 31, 1901, claimed by said sheriff.

"12.  That afterwards on the —— day of December, 1901, the said clerk made out a supplemental bill of costs, comprising the charge of $2.50 claimed by the petitioner herein by reason of the said alleged custody of said Ted Gognon, which said supplemental bill of costs was delivered to the said Clover and the said Clark to be by them certified to in accordance with law.

"13.  That the said Clark and the said Clover thereupon refused to certify said supplemental bill of costs on the ground that the said Dickmann was not entitled thereto for the services rendered as aforesaid."

## I.

The decision in this case depends upon the true meaning of that provision of section 3246, Revised Statutes 1899, which allows a sheriff a fee of one dollar and twenty-five cents a day for the safe-keeping of a person held by him under a capias, while "undergoing an examination preparatory to his commitment," where such person is so held for more than one day.  The section referred to is quite lengthy, and need not be wholly reproduced here.  The part thereof material to this case is as follows:

"The sheriff or other officer who shall take a person charged with a criminal offense from the county in which the offender is apprehended to that in which the offense was committed, or who may remove a prisoner from one county to another for any cause authorized by law, or who shall have in custody or under his charge, any person undergoing an examination preparatory to his commitment, more than one day for transporting, safe-keeping and maintaining any such person, shall be allowed by the court having cog-

nizance of the offense one dollar and twenty-five cents per day for every day he may have such person under his charge when the number of days shall exceed one. . . . One dollar and twenty-five cents per day, mileage same as officer, shall be allowed for board and all other expenses of each prisoner."

This provision of law was first engrafted upon our system of jurisprudence by the Act of February 9, 1839. [Laws 1839, p. 97.] That Act contained two sections. Section 1 was as follows: "Whenever any sheriff, or other officer shall take any person charged with a criminal offense, from the county in which such offender may be committed, by reason of there being no jail therein, or an insufficient jail; or whenever any such person shall, by virtue of law, be removed from one county to another, or when any officer shall have any such person in custody undergoing an examination preparatory to his commitment, the officer in such cases, for removing, safe-keeping and maintaining all such persons, shall be allowed by the circuit court having cognizance of the offense, such compensation as may be deemed reasonable, not to exceed, in any case, the expense of transporting a convict to the penitentiary."

The second section of the act provides that when any person was arrested upon a warrant issued on an indictment, for a misdemeanor, the sheriff should take him before some court of record, or some judge or justice, for the purpose of being admitted to bail, or the sheriff might admit the prisoner to bail.

The feature of the statute involved in this controversy has remained the same since its first adoption in 1839 to this time, except that the word "removing" in the Act of 1839, is now changed to the word "transporting."

This statute underwent adjudication in Thomas v. County of St. Louis, 61 Mo. 547, where the marshal of St. Louis, who had arrested a prisoner under a capias, sought to charge a fee of one dollar for committing him to jail pending his preliminary examination. It was held that he was not entitled to the one dollar; that the

fee of one dollar only applied to commitments to jail by an order of court, and that prior to such order of commitment, the prisoner was, in contemplation of law, in the custody of an officer, to be by him produced in court, whenever so ordered. This court said: "It is the duty of a sheriff acting under a capias to arrest and safely keep the person therein named, and to have the body of such person when and where he shall be commanded by such writ; and the statute makes it the duty of all jailers to receive from the sheriff or other officers all persons who shall be apprehended by them for offenses against this State. When a prisoner is arrested under a capias, he is held thereunder until he is either bailed, committed or discharged; and until such prisoner is either bailed, committed or discharged, any imprisonment of him in the county jail is at the discretion and for the protection of the officer executing the writ, as well as to secure the body of such prisoner, and is not a committing of such person to jail, within the meaning of the statute; and for the safe-keeping of any person in his custody undergoing an examination preparatory to commitment, he is entitled to a per diem allowance, where the number of days such person is so held exceeds one. [Wagn. Stat., 626, sec. 14.] The words 'committing any person to jail,' relate to the execution by the sheriff of an order or warrant of commitment made or issued by some officer exercising judicial functions." Accordingly the claimed fee was not allowed in that case.

This decision was rendered at the January term, 1876, and it is significant that in the twenty-six years that have elapsed since its rendition it has never been questioned, but so far as is disclosed it has been acquiesced in and followed. The rule there announced that an officer is entitled to the statutory allowance per diem for the safe-keeping of any person in his custody while undergoing an examination preparatory to commitment, where the number of days such person is so held exceeds one, has ever since been regarded as the correct interpretation of the statute. This is wholly separate from

the statutory allowance for the mileage and sum allowed for the board of the prisoner. It is the compensation allowed the sheriff for the care, expense and risk incident to the safe-keeping of the prisoner.

In fact, that such compensation is properly allowable in ordinary cases, the respondents do not seriously deny. They say, however, that this relator is not entitled to the compensation in this case, because he did not render the service, but that the prisoner was confined in a part of the calaboose that is set apart for the sheriff's prisoners, and is guarded and safely kept by the police force of the city, and that the city pays the expenses of the police and provides the calaboose, and that it would be unjust to pay for this service twice. The case of State ex rel. v. Wofford, 116 Mo. 220, is relied on to support this contention. That case is essentially different from the case at bar, and when rightly understood is an authority in favor of the claim made by relator. In that case it appeared that a prisoner was arrested, charged with a felony, and on the same day he was carried before a justice of the peace for preliminary examination. His case was continued but the justice of the peace committed him to await trial, as he was expressly authorized to do by sections 4028-4030, Revised Statutes, 1889. This all occurred on August 26, 1892. The prisoner was not put upon his preliminary examination until November 4, 1892, and then the case was dismissed. The relator was the marshal and jailer of Jackson county, and he claimed the statutory allowance of one dollar and twenty-five cents per day for all the time the prisoner stood "committed to await trial," claiming that during all the time from August 26th to November 4th, the prisoner was in his custody "while undergoing examination preparatory to commitment." This court said: "When the officer having charge of a prisoner shall take him from the county in which the offender is apprehended to that in which the crime was committed, or when the officer shall remove the prisoner from one county to another for any cause authorized by law, or when he shall have

in custody or under his charge any person undergoing an examination preparatory to his commitment more than one day at a time during such examination, then he is entitled to $1.25 per day for every day that he may have such person under his charge, when the number of days shall exceed one, and five cents per mile for every mile necessarily traveled in going to and returning from one county to another." After thus stating the meaning of the statute the same as was done in Thomas v. County of St. Louis, supra, it was pointed out that in the case then before the court the relator was not entitled to the statutory per diem for safely keeping the prisoner, because the prisoner was committed to await trial on the same day that he was arrested, and, hence, he was not in the custody of the officer more than one day, "while undergoing examination preparatory to commitment." And it was distinctly pointed out that the statute (secs. 4028 and 4030, R. S. 1889) expressly gave the examining magistrate power to thus commit a prisoner for trial when the examination is postponed until a future day.

The relator in that case clearly failed to bring himself within the terms of the statute relied on and, therefore, was properly denied the fees claimed. This case is, therefore, in perfect harmony with Thomas v. County of St. Louis, supra, and is essentially different from the case at bar, in this, that in this case the officer executed the capias on October 30, 1901, the court had adjourned for the day and the judge had gone, so the prisoner could not be brought before the court on that day. The relator was, therefore, charged with the duty and responsibility of safely keeping the prisoner until the next day, October 31st, when he was produced in court, his examination proceeded with and completed, and he was then by the court committed to jail to await trial, and was afterwards tried and found guilty. Thus the prisoner was in the custody of the relator, as sheriff of the city of St. Louis, on October 30th and 31st, "while undergoing an examination preparatory to his commitment." The relator is, therefore, clearly within

the provisions of the statute and is entitled to the fees claimed, two dollars and a half, unless he has lost or been deprived of those statutory fees, by reason of the city paying for the police, and furnishing a calaboose for the police, one part of which is set apart for the sheriff's prisoners, who while in such calaboose are guarded and kept by the police.

What was said in Thomas v. County of St. Louis, supra, is so applicable to this contention that it will bear being again reproduced.

It was there said: "It is the duty of a sheriff acting under a capias to arrest and safely keep the person therein named, and to have the body of such person when and where he shall be commanded by such writ? and the statute makes it the duty of all jailers to receive from the sheriff or other officers all persons who shall be apprehended by them for offenses against this State. When a prisoner is arrested under a capias, he is held thereunder until he is either bailed, committed or discharged; and until such prisoner is either bailed, committed or discharged, any imprisonment of him in the county jail is at the discretion and for the protection of the officer executing the writ, as well as to secure the body of such prisoner, and is not a committing of such person to jail, within the meaning of the statute; and for the safe-keeping of any person in his custody undergoing an examination preparatory to commitment, he is entitled to a per diem allowance, where the number of days such person is so held exceeds one."

If the relator had turned the prisoner over to the jailer in St. Louis, he would still have been in the custody of the relator and not committed to jail in the sense of the statute, and the relator would have been entitled to the statutory fee for safe-keeping. The jail is maintained and the jailer paid by the counties, in St. Louis by the city. It is not perceivable, therefore, why the sheriff is not equally as well entitled to the statutory fee for safe-keeping if he places the prisoner in the police calaboose instead of in the jail and has him

guarded by the police instead of by the jailer. Both places of confinement and the keepers of both prisons are provided and paid for by the county. In both cases the sheriff is responsible for the safe-keeping. The prisoner is not committed to jail or the calaboose, but is there in the discretion of the sheriff and because the law makes it the duty of the jailer to receive and hold such prisoners for the protection of the sheriff and to secure the body of the prisoner. No law is cited showing any such duty cast upon the police of St. Louis. No ordinance of the city is cited showing the establishment of a calaboose or setting apart any portion of it for the use of the sheriff. The fact is, there is no such ordinance of the city and the city has not had a calaboose nor a calaboose-keeper since the passage of the Metropolitan Police Act of 1861 (Laws 1860-1, p. 447). Prior to that time, when the city had a police force of its own there was an ordinance provision for a calaboose and a calaboose-keeper. [Rev. Ord. 1846, art. 5, p. 259, being ordinance 1708; Rev. Ord. 1856, p. 208, being ordinance 3478; Rev. Ord. 1853, p. 562, being ordinance 2556.] The metropolitan police act aforesaid required the city to turn over to the board of police commissioners, created by the act, the station-houses, watch-boxes, arms, equipments, and all other accommodations theretofore provided for the city police force. [Laws 1860-1, p. 450, sec. 12.] The calaboose thus passed under the control of the police, and since then is kept by a turnkey of the police force, and not by the calaboose-keeper previously provided for by the ordinances cited.

There is no law or ordinance cited or that we are cognizant of that requires the police department to set apart any part of the calaboose for the sheriff's prisoners, nor which requires the police to safely keep the sheriff's prisoners. Such arrangements are therefore purely matters of comity between the police department and the sheriff, and might be discontinued at any time by either party. If the police should refuse further comity of this kind to the sheriff of St. Louis, the sheriff could then do, as the sheriffs in the several counties

of the State do, place the prisoner in the county jail.

It follows, therefore, that such arrangements between the police department and the sheriff do not have the effect of depriving the sheriff of the statutory compensation for safely keeping prisoners "while undergoing examination preparatory to commitment," and that the relator herein is entitled to the fees claimed.

The respondents having failed to show cause why they should not obey the alternative writ heretofore issued herein, a peremptory writ of mandamus is hereby awarded as prayed.

All concur.